UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KYLE LAMAR PASCHAL-BARROS,<br>      Plaintiff, | :<br>:<br>: |
| v. | :    CASE NO. 3:18-cv-2021 (VLB) |
| PAUL BALATKA, et al.,<br>      Defendants. | :<br>:<br>: |

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Kyle Lamar Paschal-Barros, commenced this civil rights action asserting claims for deliberate indifference to medical needs. The remaining defendants, Paul Balatka and Kristin Carabine, have filed a motion for summary judgment. For the following reasons, the defendants' motion is granted.

**I. Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis

for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  He cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'"  *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted).  To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

II. Facts[1]

On December 14, 2017, plaintiff covered the window in his cell door with a jumpsuit.  Defs.' Local Rule 56(a)1 Statement, Doc. #78-2 ¶ 1.  Covering a cell window is a Class A disciplinary offense.  *Id.* ¶ 2.  Lieutenant Lindsay was called

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and exhibits.

when plaintiff refused the correctional officer's order to remove the obstruction. *Id.* ¶ 4.  Lieutenant Lindsay ordered plaintiff to remove the obstruction. *Id.* ¶ 5.  Plaintiff ignored the order and asked to speak to medical staff. *Id.* ¶ 6.

Nurse Balatka responded to the call and asked plaintiff to remove the obstruction. *Id.* ¶¶ 7-8.  Nurse Balatka repeated the request eight times. *Id.* ¶ 9.  Plaintiff refused to comply with the requests from Lieutenant Lindsay and Nurse Balatka. *Id.* ¶ 10.  Plaintiff asked Nurse Balatka to confirm that he has asthma. *Id.* ¶ 11.

Correctional directives require that, where exigent circumstances are not present, before using a chemical agent Lieutenant Lindsay must contact the medical unit and have a qualified medical professional check the inmate's medical records to determine whether use of a chemical agent is medically contraindicated. *Id.* ¶¶ 13-14.  Lieutenant Lindsay contacted Nurse Carabine in the medical unit and asked her whether there were any entries in plaintiff's medical records precluding use of a chemical agent. *Id.* ¶¶ 15-16.  Nurse Carabine is routinely asked to conduct such reviews. *Id.* ¶ 17.

Nurse Carabine reviewed plaintiff's medical records and, although she found references to asthma, found no entries prohibiting the use of a chemical agent. *Id.* ¶¶ 18-20.  If plaintiff's asthma was severe enough to prohibit use of a chemical agent, that fact would be clearly noted in his medical record. *Id.* ¶¶ 20-21.  There were no contraindications in the medical records. *Id.* ¶ 22.  Plaintiff disagrees with these statements but provides no copy of an entry in his medical record stating

3

that use of a chemical agent is contraindicated.  At the time of the incident, plaintiff had not reported an asthma exacerbation for over a year.  *Id.* ¶ 23.  Plaintiff's medical records do not describe him as suffering from severe asthma.  *Id.* ¶ 24.  Nurse Carabine told Lieutenant Lindsay that plaintiff's medical records contained no contraindication for use of a chemical agent.  *Id.* ¶ 25.

Plaintiff continued to defy the orders to remove the obstruction.  *Id.* ¶ 26.  Lieutenant Lindsay exhausted all other remedies before deploying the chemical agent.  *Id.*  Plaintiff removed the obstruction and correctional staff promptly entered the cell to remove plaintiff for decontamination and evaluation by medical staff.  *Id.* ¶ 27.

Plaintiff filed one Health Services Review, *i.e.*, a medical grievance, between November 2016 and December 2017.  *Id.* ¶ 36.  The form was returned without disposition as not properly filed.  *Id.* ¶¶ 36-38.  That Health Services Review does not mention use of a chemical agent, asthma, or contraindications in his medical records.  *Id.* ¶ 39.  Plaintiff filed another Health Services Review on October 4, 2018 challenging the failure of medical staff to report contraindications to the use of a chemical agent in September 2018 and December 2017.  Pl.'s Mem. Ex. Q, Doc. #86-2 at 68.

No nurses or correctional staff monitoring plaintiff after the incident reported any complaints.  Doc. #78-2 ¶¶ 42-44.  Other nurses have determined that plaintiff's medical records contain no contraindication for use of a chemical agent.  *Id.* ¶ 48.

III. Discussion

The defendants move for summary judgment on three grounds: (1) plaintiff failed to exhaust his administrative remedies, (2) the defendants were not deliberately indifferent to plaintiff's medical needs, and (3) the defendants are protected by qualified immunity.

A.  Exhaustion of Administrative Remedies

The Court first considers the defendants' argument that plaintiff failed to exhaust his administrative remedies before filing suit. The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Exhaustion of administrative remedies permits prison officials to address complaints before being subjected to suit and reduce litigation if the complaint can be resolved satisfactorily within the administrative process. *Jones v. Bock*, 549 U.S. 199, 219 (2007).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to

5

commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). Special circumstances will not relieve an inmate of his or her obligation to adhere to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendant bears the burden of proof. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 247-48 (S.D.N.Y. 2003) (citing *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999)).

Health Services Reviews are governed by Administrative Directive 8.9, which is attached to the defendant's motion as Exhibit B or may be found at portal.ct.gov/DOC. There are two types of Health Services Reviews. The first seeks review of an administrative issue, *i.e.*, a particular practice, procedure, administrative provision or policy, or it may allege improper conduct by a health services provider. The second seeks review of a diagnosis or treatment, including a decision to provide no treatment. *See id.* at 8.9(9).

Prior to filing an HSR, the inmate must seek an informal resolution of his claim by discussing the claim, face to face, with the appropriate staff member or by submitting a written report to a supervisor. Staff shall respond to the inmate within fifteen days of the receipt of a written request. *See id.* at 8.9(10).

An inmate filing the first type of HSR must designate the "All Other Health Care Issues" box on the form and provide a concise statement of what he believes to be wrong and how he has been affected. *Id.* at 8.9(12). The HSR Coordinator evaluates, investigates, and decides each review within thirty days. Each review must be rejected, denied, compromised, upheld or withdrawn. *See id.* at 8.9(12)(A). If the inmate is dissatisfied with the response, he may appeal the decision within ten business days. *See id.* at 8.9(12)(B). HSR appeals are decided by the designated facility health services director or his designee within fifteen business days after receiving the appeal. If the issue is compliance with existing standards, this concludes the appeal process. *See id.* at 8.9(12)(C).

An inmate filing the second type of HSR must designate the "Diagnosis/Treatment" box on the form and concisely explain the reason for his dissatisfaction. *See id.* at 8.9(11). Upon receipt of the form, the HSR Coordinator schedules an HSR Appointment with an appropriate medical professional as soon as possible. If the medical professional determines that the treatment was appropriate, the exhaustion process is concluded. *See id.* at 8.9(11)(A).

Plaintiff states that his claim falls within the first type of HSR, review of an administrative decision. Pl.'s Mem. Doc. #85-2, at 3. He submits a copy of the second page of his grievance referencing the use of a chemical agent on September 25, 2018 and in December 2017. Pl.'s Opp'n Ex. Q, Doc. #85-7 at 5. The grievance is dated October 4, 2018 and marked received November 9, 2018. *Id.* On October 26, 2018, plaintiff submitted an Inmate Request stating that he had not

7

received a receipt for the grievance he submitted on October 18, 2018.  *Id.* Ex. R, Doc. #85-7 at 7.  On October 29, 2018, a nurse responded that the medical unit does not issue receipts and stated that plaintiff had one pending remedy.  *Id.*  On November 28, 2018, plaintiff's appeal of the HSR was returned without disposition because his HSR was "still in process" at MacDougall-Walker Correctional Institution, a different facility from plaintiff's current place of confinement.  *Id.* Ex T, Doc. #85-7 at 11.

Defendants submit a copy of plaintiff's HSR log which shows that plaintiff filed no HSR between August 9, 2017, when one HSR was returned to him, and April 6, 2019.  Defs.' Mem. Ex. F, Doc. 78-7.  This log is obviously incomplete as a nurse acknowledged that plaintiff had a pending HSR on October 29, 2018.

Plaintiff has submitted a second appeal, filed in March 2019, indicating that he still had not received a response to his HSR.  Pl.'s Opp'n Ex. U, Doc. #85-7 at 13.  As the directive provides that a response will be issued within thirty days and plaintiff received no response in over five months, the Court concludes that administrative remedies were not available to him.  The motion for summary judgment is denied on this ground.

B.   Deliberate Indifference to Medical Needs

Defendants next contend that they were not deliberately indifferent to plaintiff's medical needs because his asthma is not a serious medical need.

Both the Supreme Court and the Second Circuit have held that prison officials' deliberate indifference to serious medical needs constitutes cruel and

8

unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). To state a claim for deliberate indifference to a serious medical need, plaintiff must show that the prison official knew that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to address it. *Harrison v. Barkley*, 219 F.3d 132, 137-38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

There are objective and subjective components to the deliberate indifference test. Under the objective prong, plaintiff's medical need must be "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). The plaintiff must show "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)); *see Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Subjectively, the defendants' conduct must constitute recklessness; they must act or fail to act while "actually aware of a substantial risk that serious inmate harm will result." *Sahauddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). However, the Eighth Amendment is not a substitute for state tort law and cannot be used to bring medical malpractice claims which are based on negligence. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation." *Id.*; *see also Salahuddin*, 467 F.3d at 280 ("[R]ecklessness entails more than mere negligence, the risk of harm must be substantial and the official's actions more than merely negligent.").

Plaintiff has asthma. Courts within the Second Circuit have held that the fact that an inmate is asthmatic does not, by definition, constitute a serious medical need. *See, e.g., Huggins v. Schriro*, No. 14-CV-6468(GBD)(JLC), 2015 WL 7345750, at *7 (S.D.N.Y. Nov. 19, 2015) ("'[b]eing an asthmatic (a person susceptible to asthma attacks) is not a condition, in Eighth Amendment parlance, that is severe or "sufficiently serious"' to underlie a constitutional violation" (quoting *Patterson v. Lilley*, No. 02-CV-6056(NRB), 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003))), *report and recommendation adopted*, 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016); *Youngblood v. Artus*, No. 10-CV-752(MAD)(DRH), 2011 WL 6337774, at *7 (N.D.N.Y. Dec. 19, 2011 ("Plaintiff's asthma condition itself does not qualify as a serious medical need for the purposes of a section 1983 claim."); *but see Lewis v. Clarkstown Police Dep't*, No. 11-cv-2487(ER), 2014 WL 1364934, at *6 (S.D.N.Y. Mar.

10

31, 2014) (finding that dispute whether plaintiff was experiencing an asthma attack when the chemical agent was deployed precluded summary judgment).

Defendants have submitted over 300 pages of plaintiff's medical records covering the period from October 2016 through December 2017. Defs.' Mem. Ex. B, Doc. #94. The records show that plaintiff was prescribed an albuterol inhaler to be kept on his person and used as needed throughout the period. Plaintiff was seen in the Chronic Disease Clinic for asthma sporadically on January 20, 2016, June 16, 2016, and March 6, 2017. *See* Pl.'s Mem. Ex. K, Doc. #85-5 at 2, and Ex. L, Doc. #85-5 at 4; Defs.' Mem. Ex. B, Doc. #94 at 287. Plaintiff's asthma was not severe. At each examination, plaintiff's asthma was described as stable and under good control. Plaintiff does not allege that he was suffering an asthma attack when Lieutenant Lindsay asked the medical unit whether a chemical agent was contraindicated. Therefore, plaintiff has not shown that he suffers from a serious medical need to support an Eighth Amendment deliberate indifference claim.

In addition, the residual effects of a chemical agent generally do not constitute a serious medical need. *See Alston v. Butkiewicus*, No. 3:09-cv-207(CSH), 2012 WL 6093887, at *16 (D. Conn. Dec. 7, 2012) (citing cases); *see also Carey v. Maloney*, 480 F. Supp. 2d 548, 557-58 (D. Conn. 2007) (exposure to chemical agent not serious medical need where asthmatic arrestee did not suffer an asthma attack or request medical attention and was decontaminated upon arrival at police station). Plaintiff alleges that he had to use his inhaler to assist with breathing following exposure to the chemical agent. Compl., Doc. #1, ¶ 12.

11

He does not allege that he suffered an asthma attack or that he required medical treatment.  Thus, plaintiff fails to present evidence that the effects of the chemical agent are a serious medical need.

Further, even if plaintiff had shown that his asthma was sufficiently serious, he fails to satisfy the subjective component of the deliberate indifference test.  Although the defendants knew that plaintiff has asthma, no medical provider noted in the medical records that a chemical agent could not be used on plaintiff.  Nurse Carabine states that plaintiff's last serious asthma attack was over a year before the incident and plaintiff presents no contrary evidence.  Absent evidence that his asthma was serious and a notation in his medical file precluding use of a chemical agent, plaintiff has not presented evidence showing that defendants were aware of a serious risk of harm if a chemical agent was deployed.[2]

Other courts have reached the same conclusion.  *See, e.g., Davis v. Thomas*, 558 F. App'x 150, 155 (3d Cir. 2014) (where medical evidence showed that inmate's asthma was not so severe that he could never be near use of pepper spray, inmate's personal opinion to the contrary was insufficient to defeat summary judgment); *Schultz v. Houle*, No. 16-Cv-11774-PBS, 2018 WL 1188753, at *2 (D.

---

[2] **Plaintiff submits a Medical Incident Report from September 25, 2018 which states that the use of a chemical agent is contraindicated.  Doc. #86-2 at 46.  The September 25, 2018 incident is not at issue in this case and plaintiff submits no medical records showing whether his asthma condition changed between December 2017 and September 2018.  As plaintiff's medical records as of December 14, 2017 included no prohibition against the use of a chemical agent and did not even show that plaintiff had severe asthma, the fact that his condition may have changed over the next year does not support plaintiff's claim in this case.**

Mass. Mar. 5, 2018) (medical director reviewed inmate's file and found no contraindications to use of chemical agent but recommended certain type of chemical agent as inmate suffered from asthma); *Howard v. Phipps*, No. 7:12CV00079, 2013 WL 5308251, at *8 (W.D. Va. Sept. 20, 2013) (director of nursing stated that "from a medical perspective, having chronic asthma was not a contraindication for the use of pepper spray").

C.   Qualified Immunity

Finally, defendants argue that, even if they were found to be deliberately indifferent to plaintiff's serious medical need, they are protected by qualified immunity.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)).  "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

**Two conditions must be met to deny an official the protection of qualified immunity. First, the facts alleged or shown by the plaintiff must state a violation of a statutory or constitutional right by the official and, second, the right was clearly established at the time of the challenged conduct. See *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first. See *Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson*, 555 U.S. at 236).**

**Under the second prong, a right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 731 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Although there is no requirement that a case have been decided which is directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. In determining whether the right is clearly established, the district court looks to case law from the Supreme Court and the Courts of Appeals. *Terbesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014). District court decisions do not constitute clearly established law.**

> **A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case. Many Courts of Appeals therefore decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity. Otherwise said, district court decisions—unlike those from the courts of appeals—do not**

14

> necessarily settle constitutional standards or prevent repeated claims of qualified immunity.

*Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (internal citations omitted); *see also Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017) ("No precedential decision of the Supreme Court or this Court 'clearly establishes' that the actions of [the defendants], viewed in the circumstances in which they were taken, were in violation of the Fourth Amendment.").

"[A] broad general proposition" does not constitute a clearly established right. *Reichle v. Howards*, 566 U.S. 658, 665 (2012). The constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id.* (quoting *Anderson*, 483 U.S. at 640). Recently, the Supreme Court addressed the issue of qualified immunity and stated that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742); *see also City of Escondido v. Emmons*, ___ U.S. ___, 2019 WL 113027, at *2 (Jan. 7, 2019) ("Under our cases, the clearly established right must be defined with specificity. 'This Court has repeatedly told courts … not to define clearly established law at a low level of generality.'" (quoting *Kisela v. Hughes*, 584 U.S. ___, 138 S. Ct. 1148, 1152 (2018) (per curiam))). "As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (citing *Anderson*, 483 U.S. at 640). The legal principle at issue must clearly prohibit the officer's conduct in the particular circumstances

15

before him.  *District of Columbia v. Wesby*, ___ U.S. ___, ___, 138 S. Ct. 577, 590 (2018).

There are no reported cases from the Supreme Court or the Second Circuit Court of Appeals stating that asthma, standing alone, is a serious medical need or that using a chemical agent on a prisoner who has asthma violates the Eighth Amendment.  Absent cases holding that a diagnosis of asthma that is stable and under good control is a serious medical need or a contraindication to the use of a chemical agent, a reasonable medical staff member would not understand that reporting no contraindications to use of a chemical agent violated plaintiff's constitutional rights.  *See Flemming v. Kemp*, No. 09-CV-1185 TJM/DRH, 2012 WL 4094196, at *4 (N.D.N.Y. Aug. 30, 2012) (medical chart reviewer noted mild asthma that was treated with inhaler but cleared inmate for possible use of chemical agent against him), *report and recommendation adopted*, 2012 WL 4094009 (N.D.N.Y. Sept. 17, 2012).  Thus, defendants also would be protected by qualified immunity.

IV.  Conclusion

The defendants' motion for summary judgment [Doc. #78] is GRANTED.  The Clerk is directed to enter judgment and close this case.

SO ORDERED this   1st[h] day of September 2020 at Hartford, Connecticut.

*Vanessa Bryant* Digitally signed by Vanessa Bryant
Date: 2020.09.01 17:36:07 -04'00'
**Vanessa L. Bryant
United States District Judge**